RECORD NO. 14-2064

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

NBL COAL COMPANY, INCORPORATED;
LIBERTY MUTUAL INSURANCE COMPANY,

*Petitioners,*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR;
TROY A. MOORE,

*Respondents.*

APPEAL FROM AN ORDER OF THE BENEFITS REVIEW BOARD
UNITED STATES DEPARTMENT OF LABOR

**OPENING BRIEF OF PETITIONERS**

John R. Sigmond
Nathaniel D. Moore
Penn, Stuart & Eskridge
804 Anderson Street
Bristol, TN 37620-2009
(423) 793-4803
jsigmond@pennstuart.com
nmoore@pennstuart.com

*Counsel for Petitioners*
*NBL Coal Company, Inc. and*
*Liberty Mutual Insurance Co.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. _____        Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

who is _____, makes the following disclosure:
        (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                          YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                          YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?          YES      NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                           YES      NO
If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
          (signature)                                                (date)

11/17/2011
SCC

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>14-2064</u>    Caption: <u>NBL Coal Co., Inc. v. Director, OWCP</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>NBL Coal Company, Inc.</u>
(name of party/amicus)

who is <u>    appellant    </u>, makes the following disclosure:
    (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

- 1 -

4.　　Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?　　☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.　　Is party a trade association? (amici curiae do not complete this question)　　☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.　　Does this case arise out of a bankruptcy proceeding?　　☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
**************************

I certify that on _____10/13/2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____/s/John R. Sigmond_____　　　　　　　　_____10/13/2014_____
(signature)　　　　　　　　　　　　　　　　　(date)

11/17/2011
SCC

# TABLE OF CONTENTS

I.    STATEMENT OF SUBJECT MATTER JURISDICTION AND
      BASIS FOR APPELLATE REVIEW……..…………………….........1

II.   STATEMENT OF THE ISSUES…………………………………..2

      1.  Whether the ALJ erred as a matter of law in determining that
          NBL Coal Company, Inc. employed the miner for 365 days
          and was therefore the responsible operator by counting a
          time period of unpaid, unapproved absence towards the 365
          day requirement of 20 C.F.R. §§ 725.101(a)(32) and
          725.493(a)(1)…………………………………………………….2

III.  STATEMENT OF THE CASE…………………………………………3

IV.   STATEMENT OF THE FACTS……………………………………..6

V.    SUMMARY OF ARGUMENT……………………………………..12

VI.   ARGUMENT…………………………………………………….......15

      A.    STANDARD OF REVIEW…………………………….......15

      B.    DISCUSSION OF ISSUES…………………………….......17

      1.  The ALJ erred as a matter of law in determining that NBL
          Coal Company, Inc. employed the miner for 365 days and
          was therefore the responsible operator by counting a time
          period of unpaid, unapproved absence towards the 365 day
          requirement of 20 C.F.R. §§ 725.101(a)(32) and
          725.493(a)(1)……………………………………………………17

VII.  CONCLUSION……………………………………………………….27

VIII. REQUEST FOR ORAL ARGUMENT………………………….29

IX.   CERTIFICATE OF COMPLIANCE………………………………30

i

X.     CERTIFICATE OF SERVICE……………………………………… 31

# TABLE OF AUTHORITIES

## CASES

Adkins v. Director, OWCP,
  889 F.2d 1360, 1361 (4th Cir. 1989)………………………………………....1

Allentown Mack Sales and Serv., Inc. v. NLRB,
  522 U.S. 359, 377, 118 S. Ct. 818 (1998)…………………………..……..........15

Arnold v. Secretary, Health Education & Welfare,
  567 F.2d 258, 259 (4th Cir. 1977)………………………………………..16

BGL Mining Company v. Cash,
  1998 U.S. App. LEXIS 22654 (6th Cir. 1999)(unpub.).…………………...24, 25

C.B. v. Bowman Coal Company, Inc.
  BRB No. 07-0320 (July 23, 2008)(unpub.)…………………………………10

Director, OWCP v. Greenwich Collieries,
  512 U.S. 267 (1994)…………………………………………………………17

Harman Mining Co. v. Dir., OWCP,
  678 F.3d 305, 310 (4th Cir. 2012)…………………………………………...15

Island Creek Coal Co. v. Compton,
  211 F.3d 203, 208 (4th Cir. 2000)…………………………………………15

Jewell Smokeless Coal Corporation v. Street,
  42 F.3rd 241 (4th Cir. 1994)………………………………………………17

Lewis Coal Co. v. Dir., O.W.C.P.,
  373 F.3d 570, 575 (4th Cir. 2004)…………………………………….……..15

NLRB v. Columbian Enameling & Stamping Co.,
  306 U.S. 292, 300, 83 L. Ed. 660, 59 S. Ct. 501 (1939)………………………15

iii

Piney Mountain Coal Company v. Mays,
    176 F.3d 753; 1999 U.S. App. LEXIS 8487 (4th Cir. 1999)…………………..15

P.T. Mine Services, Inc. v. Director, OWCP,
    412 Fed. Appx. 461; 2011 U.S. App. LEXIS 281 (4th Cir. 2011)(unpub.)
    ………………………………………………………………………..22,23,24

Richardson v. Perales,
    402 U.S. 389, 401, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971)………..................15

Smith v. Chater,
    99 F.3d 635, 637 (4th Cir. 1996)……………………………..…………………...15

Sterling Smokeless Coal Co. v. Akers,
    131 F.3d 438, 439 (4th Cir. 1997)………………………………………………...16

## STATUTES

Federal Coal Mine Health and Safety Act
    30 U.S.C. § 901(a)…………………………………………………………12,17
    30 U.S.C. § 932(a)……………………………………………………………1

Longshore and Harbor Workers' Compensation Act ("LHWCA")
33 U.S.C. § 921(c)………………………………………………………………..1

## REGULATIONS

Part 718 – Standard for determining coal workers' total disability or death due to pneumoconiosis.

    20 C.F.R. §718.304…………………………………..…………...........6

Part 725 – Claims for Benefits Under Part C of Title IV of the Federal Mine Safety and Health Act.

    20 C.F.R. §725.101……………………...9,10,12,13,14,17,18,19,20,22,24,25
    20 C.F.R. §725.493……………………………………..…………12,14,18,26
    20 C.F.R. §725.494……………………………………..…………...5,9,17,24

20 C.F.R. §725.495……………………………………………...…………....9,12,17

## I.   STATEMENT OF SUBJECT MATTER JURISDICTION AND BASIS FOR APPELLATE REVIEW

This matter involves an appeal from a final order of the United States Department of Labor Benefits Review Board ("Board").  Pursuant to section 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c), as incorporated by the Black Lung Benefits Act, 30 U.S.C. § 932(a), "[a]ny person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within 60 days following the issuance of such Board order a written petition praying that the order be modified or set aside."  Adkins v. Director, OWCP, 889 F.2d 1360, 1361 (4th Cir. 1989).

The Board's August 7, 2014 Decision and Order affirming Administrative Law Judge Daniel Solomon's Order Awarding Benefits is a final order on the merits of the Respondent's claim for Federal Black Lung Benefits. Petitioners NBL Coal Company, Inc. and Liberty Mutual Insurance Company filed Employer's Petition for Review in this Court on October 6, 2014, within the 60 day jurisdiction time limit to appeal a final order from the Board.  The injury alleged in this case occurred in the State of Virginia, within the United States Court of Appeals for the Fourth Circuit's jurisdiction.  Accordingly, this Court has jurisdiction to review the Board's decision.

1

## II.  STATEMENT OF THE ISSUES

1. **THE ALJ ERRED AS A MATTER OF LAW IN DETERMINING THAT NBL COAL CO., INC. EMPLOYED THE MINER FOR 365 DAYS AND WAS THEREFORE THE RESPONSIBLE OPERATOR BY COUNTING A PERIOD OF UNPAID, UNAPPROVED ABSENCE TOWARDS THE 365 DAY REQUIREMENT OF 20 C.F.R §§ 725.101(a)(32) AND 725.493(a)(1).**

### III.   STATEMENT OF THE CASE

This case is before the Court on a subsequent claim for benefits filed under the Black Lung Benefits Act (BLBA) by the claimant and respondent, Troy Moore ("the miner"), on November 4, 2008.  JA at 181 through 184.  The Department of Labor issued a Proposed Decision and Order awarding benefits on June 7, 2010.  JA at 469. The Department of Labor's Proposed Decision and Order also identified NBL Coal Company, Inc. ("NBL"), as insured by Liberty Mutual Insurance Company, as the designated operator responsible for paying benefits to Mr. Moore.  JA at 470.  The matter was subsequently referred to the Office of the Administrative Law Judges on NBL's appeal of the DOL's Proposed Decision and Order, and a formal hearing was held on October 24, 2011 in Big Stone Gap, Virginia.  JA at 75.

On March 26, 2012, Administrative Law Judge Daniel F. Solomon issued a Decision & Order awarding black lung benefits to the miner and finding that NBL was properly named as the responsible operator.  JA at 50 through 62.  The Petitioners timely appealed the Administrative Law Judge's Decision and Order awarding benefits to the Board.  JA at 40.  The Petitioners argued that the Administrative Law Judge erred by failing to resolve conflicting evidence as to whether it was properly named as a responsible operator.  JA at 40-50.  The Director, Office of Workers' Compensation programs (the "Director"), filed a limited response, contending that the Administrative

3

Law Judge erred by requiring the Petitioners to prove that NBL did not employ the miner for one year, arguing that it was instead the Director's burden to prove that the miner had worked for the NBL for at least one year. Id.

On April 11, 2013, the Board issued a Decision and Order affirming in part and vacating in part the Administrative Law Judge's March 16, 2013 award. JA at 40 through 49. Specifically, the Board vacated the Administrative Law Judge's finding that NBL was the responsible operator and instructed the Administrative Law Judge to make specific findings and credibility determinations on remand, and to determine whether the Director had established that the miner's employment relationship with NBL lasted at least one year. JA at 43 through 44. The Board, however, affirmed the Administrative Law Judge's finding that the evidence established the presence of complicated pneumoconiosis. JA at 44 through 47.

On September 30, 2013, the Administrative Law Judge issued his Decision and Order on remand, in which he found that the Director had carried its burden of establishing that the Respondent miner was employed by NBL for one year and, therefore, that NBL was the properly designated responsible operator. JA at 35 through 39. The Petitioners once again appealed; however, the Board affirmed the Administrative Law Judge's Decision in its entirety on August 7, 2014. JA at 3 through 9. The Board specifically affirmed the ALJ's finding that the time period from

4

March 23, 1993, through May 10, 1993, during which the miner did not work and was not paid, could be counted towards the 365 day requirement of 20 C.F.R. § 725.494 for operator liability. JA at 6-8. In response to the Board's decision, the Petitioners filed a Petition for Review in this Court on October 6, 2014, less than 60 days after the Board issued its Decision and Order. JA at 507. This Court subsequently issued a Briefing Order which stated that the Petitioner's Opening Brief and Appendix should be submitted by November 17, 2014.

On November 10, 2014, the Petitioner's filed a Motion for a 30 day extension to file the Opening Brief and Appendix, which was granted by this Court.

## IV. STATEMENT OF THE FACTS[1]

The miner, Troy Moore, was born on September 25, 1957. JA at 181. At hearing, the miner estimated that he worked from 15 to 17 years as a coal miner, although he testified that he could not remember exactly how long he had worked. JA at 88. The Department of Labor credited the miner with approximately 10.63 years of coal mine employment in its Proposed Decision and Order Awarding Benefits. JA at 470.

Documentary evidence in the record established, and it was not disputed, that the miner first worked for NBL Coal Company, Inc. on March 28, 1992. JA at 191. The miner testified that he last worked as a coal miner for NBL on March 23, 1993. JA at 93. The miner indicated that on March 23, 1993, he sustained an injury and that he never went back to work for NBL after that date. JA at 93. However, although he did not return to employment with NBL after March 23, 1993, the miner did not believe that he was technically terminated on that date. JA at 100. The miner was unsure as to whether he communicated with the employer on any date after March 23, 1993. JA at 100 through 101.

---

1 The Petitioners have limited the discussion of the facts to those that are pertinent to the sole issue of this appeal, i.e., whether NBL Coal Company, Inc. was properly designated as the responsible operator in the miner's black lung claim. The Petitioners have not discussed the substantial amount of medical evidence because, at this stage in the proceedings, no party is contesting that the miner established entitlement to benefits by proving that he suffered from the condition of complicated pneumoconiosis as defined by 20 C.F.R. § 718.304.

The miner filed a state workers' compensation claim with the Virginia Workers' Compensation Commission (VWC) in regards to the alleged March 23, 1993 injury. JA 191-265. Although the miner's state compensation claim was eventually denied, the VWC's file was admitted into the record as Director's Exhibit 6, and the documentary and testimonial evidence in that file was critical to the ALJ's finding that NBL was properly designated as the responsible operator in this claim. JA at 36-37.

Included in the VWC file is a March 18, 1996 letter from the accountant for NBL to the United States Department of Labor which confirmed that the miner was employed with NBL from March 28, 1992 until March 23, 1993. JA at 191. Specifically, that letter reads in part as follows:

> Troy Moore, [SSN redacted], was employed by NBL Coal Company, Inc. from March 28, 1992 until March 23, 1993. I am attaching copies of payroll time sheets reflecting these dates.
>
> I am also enclosing a copy of the opinion of Deputy Commissioner Burchett regarding the workers' compensation claim filed by Troy Moore. As you will note from the opinion, the Commissioner denied this claim. Also, as stated in the opinion, Mr. Moore contends that his injury occurred on March 23, 1993, his last date of employment with NBL Coal Company, Inc.

JA at 191.

Next, the record contained the October 27, 1993 Opinion from the VWC denying benefits for the alleged March 23, 1993 injury. JA at 192 through 202. In

7

that Opinion, the deputy commissioner for the VWC summarized the testimony of

Larry Lambert, the claimant's supervisor at NBL Coal Company. JA at 194 through

195. The deputy commissioner summarized Mr. Lambert's testimony as follows:

> He stated that claimant's wife called him during the evening of March 24,
> 1993 and advised that claimant had pulled a muscle in his arm and back,
> however, his testimony is that no accident was reported. His testimony is
> that he asked claimant's wife if claimant had been injured at work and
> she reportedly stated she did not know where the injury had happened.
> He stated he spoke with claimant on payday which was on March 26,
> 1993, and he stated he asked claimant specifically what happened and
> claimant reportedly stated he didn't know. His next contact with claimant
> was on May 3, 1993. At that time claimant reportedly called the
> employer and advised he was coming back to work the following
> Monday. He told claimant to bring a release from a physician. Claimant
> reportedly called on May 10, 1993 and said he couldn't come back to
> work as he had gotten into some problem with the police and had been
> arrested. His testimony is that he made the notes he referred to the same
> day as the incidents occurred.

JA at 195.

Based upon the evidence regarding the miner's employment with NBL, the

Petitioners argued that the miner was not employed by that company for one calendar

year and, therefore, that NBL did not qualify as a potentially liable operator pursuant

to 20 C.F.R. §725.494 and 20 C.F.R. §725.495(a)(1). JA at 36. Specifically, the

Petitioners' argument was that the time period from March 25, 1993, through May 10,

1993 did not constitute and "approved absence" as contemplated by 20 C.F.R.

§725.101(a)(32), and that that time period could not be counted towards the one

calendar year requirement of 20 C.F.R. §725.495(a)(1). JA at 36.

In his September 30, 2013, Opinion awarding benefits, the ALJ rejected the Petitioners' argument and found that NBL was the correct responsible operator. JA at 35-38. The ALJ noted that the Director must proved that an employer employed a claimant for a 365 day period during which the claimant worked for 125 days to establish that the employer is a potentially liable operator. JA at 36. Then, the ALJ found that Mr. Lambert's testimony indicated that the miner had retained the right to employment with NBL until at least May 3, 1993, and possibly until May 10, 1993. JA at 3. According to the ALJ, the fact that the miner could have returned to work during the time period from March 24, 1993, through May 10, 1993, was sufficient to establish that an employment relationship existed. JA at 36-37. Accordingly, the ALJ counted the period of unpaid absence from March 23, 1993 until May 10, 1993 in determining whether the miner worked for NBL Coal Company for a cumulative period of 365 days. Id. And, as the time period from March 28, 1993, through May 10, 1993, clearly constitutes a period greater than one year, the ALJ determined that the Director had met his burden of establishing that the miner worked for NBL Coal Company for a period of at least one year. JA at 37.

On appeal before the Benefits Review Board, counsel for the Petitioners again argued that the time of unpaid and unapproved absences from March 23, 1993, through May 10, 1993 could not be considered in the 365 day responsible operator determination. JA at 20 through 22. Specifically, the Petitioners argued that, pursuant

9

to 20 C.F.R. §725.101(a)(32), periods of time during which a claimant was off work for an *approved* absence may be included in determining whether that claimant worked for a full year for the employer, but that such absences are not required to be included. JA at 21. Moreover, the Petitioners argued that the absence in question was not an approved absence because the claimant was not paid and because the workers' compensation claim was denied. JA at 21 through 22. Petitioners cited to the Benefits Review Board's decisions in <u>CB v. Bowman Coal Company Incorporated</u>, No. 07-0320 (July 23, 2008)(unpub.) and <u>Soulsby v. Consolidation Coal Co</u>., 3 BLR 1-565 (1981). JA at 22. Accordingly, the Petitioners argued that the ALJ erred in determining that unpaid time off work for a denied workers' compensation injury could be counted towards the 365 day responsible operator determination. JA at 22.

On August 7, 2014, the Benefits Review Board issued its Decision affirming the ALJ's Decision and Order. The Benefits Review Board held that whether a work related injury occurred on March 23, 1993, was not determinative of the issue. JA at 6. Rather, the Board determined that the determinative factor was whether an employment relationship existed between the miner and NBL during the period of absence at issue. JA at 6. Relying on the testimony of Mr. Lambert that appeared to justify an inference that the miner could have returned to work until May 10, 1993, the Board affirmed the ALJ's Decision on remand. JA at 6 through 8.

10

## V.    SUMMARY OF THE ARGUMENT

The Black Lung Benefits Act provides monthly benefits to miner's and surviving spouses of miner's who experience totally disability or death due to the disease of pneumoconiosis.  30 U.S.C. § 901(a).  Where a claimant proves entitlement under the Act, payment of the claimant's benefits is the responsibility of the coal mine operator whom most recently employed the claimant for one year (the "responsible operator").  20 C.F.R. §725.495(a)(1); 20 C.F.R. §725.101(a)(32).  The regulations define a year as a 365 day period during which an employment relationship exists and during which the claimant worked at least 125 days.  20 C.F.R. §725.101(a)(32).  The regulations go on to define an "employment relationship" as "any relationship under which an operator retains the right to direct, control, or supervise the work performed by a miner, or any other relationship under which an operator derives a benefit from the work performed by a miner."  20 C.F.R. §725.493(a)(1).  Finally, the regulations provide that "any day for which the miner received pay while on an approved absence, such as vacation or sick leave, may be counted as part of the calendar year," but not towards the 125 working day requirement.  20 C.F.R. §725.101(a)(32).

In the case at hand, it is undisputed that the miner first worked for NBL Coal Company, Inc. on March 28, 1992.  It is also undisputed that the miner's last working day for NBL was March 23, 1993.  However, the ALJ and the BRB determined that the time period from March 24, 1993 through May 10, 1993, during which the miner

11

did not work and was not paid, could be counted towards the one calendar year requirement because it appeared that the miner *could have* returned to work for NBL during that time period. The ALJ's and BRB's interpretation of the one-calendar year requirement is inaccurate for several reasons.

First, the miner's absence during the time period in question was unpaid and unapproved. Section 725.101(a)(32) specifies that time off for "approved absence" for "which the miner received pay" *may* be counted towards the one calendar year requirement for an employer to be deemed a responsible operator. There is no evidence in the record to suggest that the absence was approved, as the miner was not working due to an alleged workers' compensation injury that was eventually denied. In addition, the miner did not receive any pay for any time period after March 23, 1993. As the miner was out of work on an unapproved, unpaid absence from March 24, 1993, through May 10, 1993, that time period cannot be counted towards the one calendar year requirement, regardless of whether the miner had technically been terminated.

Next, regardless of whether the absence was "approved," an employment relationship as defined by the regulations did not exist during the March 24, 1993, through May 10, 1993 time period. Section 725.493(a)(1) defines an employment relationship as "any relationship under which an operator retains the right to direct, control, or supervise the work performed by a miner, or any other relationship under

which an operator derives a benefit from the work performed by a miner." Here, the operator did not retain any right over or derive any benefit from "the work performed by" the miner during the time period in question because there was no work performed by the miner during that period. By the plain language of §725.493(a)(1), there was no employment relationship between NBL and the miner at any time after March 23, 1993.

Based upon the above, the Petitioners contend that the ALJ erred in finding, and the BRB erred in affirming the finding, that NBL qualifies as a potentially liable operator under §725.101(a)(32). As the facts are not in dispute, and as this appeal solely raises questions of law, the Petitioners request that this Court reverse the ALJ's finding that it is the responsible operator and dismiss the Petitioners from this claim.

## VI.  ARGUMENT

## A.  STANDARD OF REVIEW

In black lung cases, this Court reviews decisions of the Benefits Review Board "to assess whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the [Board] and ALJ are rational and consistent with applicable law." Harman Mining Co. v. Dir., OWCP, 678 F.3d 305, 310 (4th Cir. 2012), *citing* Lewis Coal Co. v. Dir., O.W.C.P., 373 F.3d 570, 575 (4th Cir. 2004). The Court reviews the ALJ's and Board's legal conclusions *de novo*. Island Creek Coal Co. v. Compton, 211 F.3d 203, 208 (4th Cir. 2000). The Court must defer to the judgment of the ALJ regarding findings of fact where the ALJ's decision is supported by "substantial evidence." Smith v. Chater, 99 F.3d 635, 637 (4th Cir. 1996), *citing* Richardson v. Perales, 402 U.S. 389, 401, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971).

"Substantial evidence is more than a mere scintilla, and must do more than create a suspicion of the existence of the fact to be established." Piney Mountain Coal Company v. Mays, 176 F.3d 753; 1999 U.S. App. Lexis 8487 (4th Cir. 1999), *quoting* NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 83 L. Ed. 660, 59 S. Ct. 501 (1939). In Allentown Mack Sales and Serv., Inc. v. NLRB, the Supreme Court explained that the substantial evidence test requires a degree of evidence that could satisfy a reasonable fact-finder of a particular fact. 522 U.S. 359, 377, 118 S. Ct. 818 (1998). Furthermore, this Court should address whether the ALJ and the

14

Board have analyzed all relevant evidence and provided a sufficient explanation of the rationale used in determining whether a finding is supported by substantial evidence. *See* Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997), *citing* Arnold v. Secretary, Health Education & Welfare, 567 F.2d 258, 259 (4th Cir. 1977).

### B. DISCUSSION OF ISSUES

The Black Lung Benefits Act provides monthly benefits to miner's and surviving spouses of miner's who experience totally disability or death due to the disease of pneumoconiosis. 30 U.S.C. § 901(a). In order to receive benefits under the Black Lung Benefits Act, a claimant must prove that he has 1) pneumoconiosis, 2) arising out of the claimant's past coal mine employment, that has, 3) caused or contributed to, 4) a disabling respiratory impairment. Jewell Smokeless Coal Corporation v. Street, 42 F.3rd 241 (4th Cir. 1994). The claimant must prove all elements by a preponderance of the evidence. Director, OWCP v. Greenwich Collieries, 512 U.S. 267 (1994).

Where a claimant proves entitled under the Act, payment of the claimant's benefits is the responsibility of the "responsible operator." 20 C.F.R. §725.495(a)(1). The regulations define the "responsible operator" as "the potentially liable operator, as determined in accordance with §725.494, that most recently employed the miner." Id. To qualify as a "potentially liable operator," a coal mine employer must have employed a claimant for a period of not less than one year as defined by 20 C.F.R.

15

§725.101(a)(32).  20 C.F.R. §725.494.  The regulations define "a year", for operator

liability purposes, as follows:

> "a year means a period of one calendar year (365 days, or 366 days if one of the days is February 29th), or partial periods totaling one year, during which the miner worked in or around a coal mine or mines for at least 125 "working days."  A "working day" means any day or part of a day for which a miner received pay for work as a miner, but shall not include any day for which the miner received pay while on an approved absence, such as vacation or sick leave.  In determining whether a miner worked for one year, any day for which the miner received pay while on an approved absence, such as vacation or sick leave, may be counted as part of the calendar year and as a partial periods totaling one year period."

20 C.F.R. §725.101(a)(32).

Finally, the regulations define an "employment relationship" as "any

relationship under which an operator retains the right to direct, control, or supervise

the work performed by a miner, or any other relationship under which an operator

derives a benefit from the work performed by a miner."  20 C.F.R. §725.493(a)(1).

Here, the time period from March 24, 1993, through May 10, 1993, cannot be

counted towards §725.101(a)(32)'s 365 day requirement because the miner was not at

work due to an unapproved, unpaid absence.  Further, even the ALJ and BRB had

authority to consider the time period in question in the 365 day analysis, an

employment relationship, as defined by §725.493(a)(1), did not exist between the

miner and NBL because no work was being performed by the miner and NBL was

deriving no benefit from the miner.  As such, the ALJ's finding that NBL is the

16

properly designated responsible operator must be reversed, and the Petitioners must be dismissed from this claim.

> **a.    The ALJ erred as a matter of law by counting the miner's unpaid, unapproved absence from the employer towards the one calendar year prong of the potentially liable operator test.**

In determining whether a miner worked for one calendar year for a coal mine operator, the regulations allow, but do not require, the Director to count days "for which the miner received pay while on an approved absence, such as vacation or sick leave." 20 C.F.R. §725.101(a)(32).  The Department of Labor provided the following guidance in its comments to the 2000 revisions to the regulations regarding its intent behind the revised §725.101(a)(32):

> the Department has now amended the language of §725.101(a)(32) to clarify that periods of approved absences count only towards the miner's year of employment, and not to the actual 125 "working days" during which the miner must have worked and received pay as a miner.  Thus, in order to have one year of coal mine employment, the Regulation contemplates an employment relationship totaling 365 days, within which 125 days were spent working and being exposed to coal dust, as opposed to being on vacation or sick leave. 65 Fed. Reg. 79959 (Dec. 20, 2000).

Accordingly, based upon the plain language of §725.101(a)(32), as well as the Department of Labor's comments regarding that regulation, the adjudicator can count a period of absence towards the 365 day requirement if the absence is approved *and* the miner was paid for the absence.  In the case at hand, because the miner was not paid for his absence, and because his absence was not approved, the time period in

question cannot be counted towards the one calendar year prong of the potentially liable operator test.

First, the miner's time away from work due to a claim for an alleged injury which was found not to have occurred by the Virginia Workers' Compensation Commission is not an "approved absence" because the miner did not receive any pay for that time period. The regulations provide little in the way of defining an "approved absence," other than citing vacation and sick leave as examples. Importantly, however, employees are paid for both vacation and sick leave, the only two examples provided by the Department of Labor in the regulations. And, given that §725.101(a)(32) only allows the adjudicator to count paid time, it can be appreciated that absences for which a miner is not paid are not approved. As such, the plain language of the relevant regulations dictates that unpaid time away from the employer does not constitute an "approved absence" and may not be considered in determining whether a claimant was employed for 365 days with an employer.

Further, regardless of whether the miner was paid for the time period in question, the record contains no other evidence that the miner's absence was "approved." As the regulations provide that a miner can be credited only for an "approved absence," the regulations naturally contemplate the existence of an "unapproved absence." The ALJ and the BRB found that the miner's absence from March 24, 1993, through May 10, 1993 was approved solely because the miner was

18

not yet terminated. However, if the miner had been terminated on March 24, 1993, the time period in question would not be an "absence" from work at all as he would have no longer been an employee. Based upon the plain language of the regulations, the category of "unapproved absence" must exist somewhere between an "approved absence" and termination. Although the categories of approved and unapproved absences are not precisely defined, it seems clear that an unpaid absence for an injury which was determined not to be the responsibility of the employer would fall into the latter category. The ALJ's and BRB's interpretation of the statutory framework renders the term "approved" absence moot, as under their interpretation there can only be an absence, which must always be counted toward the 365 day requirement, or termination.

It is undisputed that the miner was not paid for any day after March 23, 1993. It is also undisputed that the miner's workers' compensation claim for the alleged injury of March 23, 1993, was denied, and that he received no benefits for the time period of alleged disability. Accordingly, because the miner's absence was unpaid, and because the record lacks any evidence indicating that the employer approved the absence, the absence was unapproved and the adjudicator cannot consider the time period in question in determining whether the miner was employed by NBL for a period of 365 days.

19

Further, even if an unpaid absence can be considered "approved," §725.101(a)(32) still only permits the adjudicator to count approved absences "for which the miner received pay." In an unpublished decision, the 3rd Circuit in <u>PT Mine Services, Inc., v. Director OWCP</u> noted that a black lung claimant's unpaid time away from work could not count toward the 365 day period where the claimant did not receive pay for such absence. 412 F.Appx. 461 (2011 U.S. App. LEXIS 281, January 5, 2011).[2] In that case, the claimant worked for a coal mine employer (Apolo Construction Company) from October 2, 2000 until October 5, 2001. 412 F.Appx at 463. However, from August 16, 2001 to September 15, 2001, the claimant was laid off from work due to a slow down in production. <u>Id</u>. During the August 16, 2001, to September 15, 2001 time period, the claimant collected unemployment benefits and was not paid, although he did retain his seniority at the employer and did not lose entitlement such as health insurance or his right to participate in the company's 401K plan. <u>Id</u>. In addition, the claimant believed that he would be recalled to work at the employer and did not look for work during the layoff period. <u>Id.</u> When he began working for Apolo again after September 15, 2001, he was not required to reapply for his job with the employer. <u>Id.</u> However, the ALJ found that Apolo did not qualify as

---

2 The Petitioner's concede that this is an unpublished decision from another jurisdiction that is not binding upon this Court. Nonetheless, the Petitioners contend that the reasoning of the 3rd Circuit is sound. Moreover, the Petitioners note the scarcity of case law on this specific issue, particularly since the 2000 revisions to the regulations which provided the current definition of "one year."

a potentially liable operator because the claimant was not employed by the company

for a period of one calendar year, and affirmed the Director's designation of an earlier

employer (P.T. Mine Services, Inc.) as the responsible operator.  Id. at 462.

On the named responsible operator's appeal, both the 3rd Circuit and the

Benefits Review Board affirmed the ALJ's determination that the later employer did

not employ the claimant for a 365 day period.  412 F.Appx. at 463.  Specifically, the

3rd Circuit stated as follows:

> The ALJ's and BRB's determinations that the layoff period severed
> [claimant's] employment relationship with Apolo are reasonable in light
> of the law and the facts.  PT Mine's argument to the contrary – that
> claimant's layoff was an "approved absence" from Apollo-does not
> convince us otherwise.  The Regulations allow the fact finder to count
> "approved absences" toward the 365 day period, but only to the extent
> that the miner "received pay" for such absences. (Citations omitted) PT
> Mine has not pointed to any authority that indicates that the BRB and
> ALJ were permitted, much less required, to include time for which the
> miner did not work for and was not paid by the employer and, indeed,
> received unemployment compensation, in the 365 day period.

Id. at 463-464.  Although that court's decision rested primarily upon the fact that the

layoff period severed the employment relationship, the court specifically noted that

the regulations only allow approved absences to be counted towards the 365 day

period if a claimant is paid for the approved absence.

Similarly, here, it is undisputed that the miner was not paid any wages by the

employer for work after March 23, 1993.  Regardless of whether the miner's absence

for an alleged injury was "approved," the plain language of §725.101(a)(32) provides

21

that only time off of work for which the miner received pay may be counted towards the one calendar year requirement. The employer contends that this Court should adopt the 3rd Circuit's reasoning from <u>P.T. Mine Services</u> and find that the miner's time away from work for which he is not paid cannot be counted towards the one calendar year requirement.  As noted by that court, the ALJ and the BRB are without authority to count unpaid leave towards the one calendar year requirement of 20 C.F.R. §725.494.

Finally, the Petitioners note that in holding that an unpaid leave of absence may be counted towards the 365 day requirement so long as there is no evidence that the employment was terminated and the record indicates that the claimant retained the right to employment, both the BRB and the ALJ relied upon <u>Elswick v. New River Co</u>., 2 BLR 1-1109 (1980), and <u>BGL Mining Co. v. Cash</u>, 165 F.3d 26 (6th Cir. 1998)(unpub.).  However, both of these cases were decided prior to the 2000 revised regulations which specifically state that time away from work can be counted towards the one calendar year requirement if the absence is approved and if the claimant receives pay for the absence.  After the Sixth Circuit's decision in the <u>Cash</u> case, the DOL revised the regulations and added §725.101(a)(32),  which specifies that "approved" absence "for which the miner received pay" may be counted towards the 365 day requirement.  The Petitioners contend that this Court should disregard case

law that pre-dates the current definition of a "year" in its determination of whether the ALJ's findings are in accordance with the law.

In counting the miner's unapproved, unpaid time away from the employer towards the 365 day responsible operator requirement, the ALJ and the BRB each ignored the plain language of §725.101(a)(32), which permits only paid, approved absences to be considered in the 365 day determination.  While the question of whether the miner was officially terminated may be relevant to the inquiry at hand, it is not the only relevant question.  Significantly, the miner could not recall whether he had actually ever been formally terminated, or whether he simply never returned to work for NBL.  JA at 100-101.  Therefore, because the miner's absence between March 24, 1993, and May 10, 1993, was unapproved, and because he was not paid for that absence, the ALJ erred in counting that period and determining that NBL employed the miner for 365 days.

**b.    The ALJ erred as a matter of law in finding that an employment relationship existed between the miner and NBL Coal Company, Inc. during the time period from March 24, 1993, through May 10, 1993.**

Unlike the term "approved absence," the regulations provide a very specific definition for an "employment relationship."  Specifically, the regulations define an employment relationship as "any relationship under which an operator retains the right to direct, control, or supervise the work performed by a miner, or any other

23

relationship under which an operator derives a benefit from the work performed by a miner." 20 C.F.R. §725.493(a)(1).

Here, an employment relationship as defined by §725.493(a)(1) did not exist between the miner and NBL because no work was being performed by the miner and NBL was deriving no benefit from the miner. Nonetheless, in determining that an "employment relationship" existed between the miner and NBL during the time period of March 24, 1993, through May 10, 1993, the ALJ and the BRB ignored the §725.493(a)(1) definition and instead focused on whether the miner had been terminated. As such, the ALJ erred in determining that an employment relationship existed between the miner and NBL from March 24, 1993, through May 10, 1993, because he failed to apply the statutory definition of "employment relationship."

## VII.  CONCLUSION

WHEREFORE, for the above-mentioned reasons, Petitioners respectfully request that the ALJ's finding that NBL Coal Company, Inc. is the operator responsible for the miner's award from the September 30, 2013 Decision and Order be reversed, and that the Petitioners be dismissed from this claim.  The ALJ erred as a matter of law in counting the period from March 24, 1993, through May 10, 1993, in his determination of whether NBL employed the miner for 365 days pursuant to 20 C.F.R. §725.494 because the miner's absence during that period was unpaid and unapproved.  Moreover, the ALJ and the BRB ignored the regulatory definition of an "employment relationship" in their analysis of whether the miner was employed by NBL for 365 days.  Because NBL did not employ the miner for 365 days, it does not qualify as a potentially liable operator, or as the responsible operator, and the Petitioners must therefore be dismissed from this claim.

Respectfully submitted,

NBL COAL CO., INC. &
LIBERTY MUTUAL INSURANCE
COMPANY

By Counsel

PENN, STUART & ESKRIDGE
P. O. Box 2009
Bristol, VA 24203
Phone: 423-793-4804
Fax: 423-793-4844
nmoore@pennstuart.com

By:  /s/ Nathaniel D. Moore
     Nathaniel D. Moore, Esq.
     Va. State Bar # 84977

## VIII.  REQUEST FOR ORAL ARGUMENT

The Petitioners respectfully request the opportunity to argue these issues orally before the Court.  The Petitioners note that the matter presented in this appeal has not been ruled upon by this Circuit since the Department of Labor's revision to the Regulations in the year 2000.

## IX.    CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements
No. 14-2064   Caption:<u>Liberty Mutual Insurance Co. v. DOWCP</u>

1.    This brief collies with the type-volume limitation of Federal Rule of
Appellate Procedure 32(a)(7)(B) because:

This brief contains **5,907** words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
because:

This brief has been prepared in a proportionally spaced typeface
using Microsoft Word 2007 Version in Times New Roman 14  point
font.

<u>/s/ Nathaniel D. Moore        </u>
Nathaniel D. Moore
Dated: December 17, 2014

## X.     <u>CERTIFICATE OF SERVICE</u>

I, Nathaniel D. Moore, do herby certify that I served Brief of Petitioners upon

the following by electronic delivery this 17th day of December 2014.

ELECTRONIC AND
HAND DELIVERY:

Patricia S. Connor
Clerk of Court
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 E. Main St., Suite 501
Richmond, VA 23219-3517

ELECTRONIC SERVICE:

Joseph E. Wolfe
Wolfe, Williams, Rutherford & Reynolds
470 Park Avenue
P.O. Box 625
Norton, VA 24273
jwolfe@wwrrlawfirm.com

MacKenzie Fillow
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W. Suite N-2119
Washington, D.C. 20210
blls-sol.gov

/s/ Nathaniel D. Moore
Nathaniel D. Moore
*Counsel    for    Liberty    Mutual
Insurance Co.*

29